UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD L. DAVIS,

       Plaintiff,                              Case No. 06-10461

v.                                            District Judge Robert H. Cleland
                                                 Magistrate Judge R. Steven Whalen

AUDBERTO ANTONINI, M.D.,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the Court are Defendant's Motion to Dismiss [Docket #10] and Motion for Summary Judgment [Docket #20], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that the Motion to Dismiss based on non-exhaustion of administrative remedies [Docket #10] be DENIED, but that the Defendant's Motion for Summary Judgment [Docket #20] be GRANTED, and the Complaint DISMISSED WITH PREJUDICE. I further recommend that Plaintiff's claim for intentional infliction of emotional distress be DISMISSED WITH PREJUDICE as frivolous.

**I. FACTS**

On February 2, 2006, Plaintiff Ronald Davis, a prison inmate in the custody of the

Michigan Department of Corrections (MDOC), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983, alleging that Defendant Dr. Audberto Antonini was deliberately indifferent to his serious medical needs, and that the Defendant also illegally retaliated against him for filing a prison grievance.

Plaintiff alleges in his Complaint that on September 10, 2004, he was transferred to the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. *Complaint*, ¶ 1. He alleges that he suffers from extreme back pain, and that Dr. Antonini refused to refill his pain medication. *Id.* ¶¶ 3-4. Plaintiff claims that over the course of time, Dr. Antonini caused him to be deprived of a wheelchair and a TENS unit, and accused him several times of malingering. *Id.* ¶¶ 10-11, 14, 20, 22. He also claims that Antonini refused to refer him to a specialist. *Id.* ¶ 12. He concludes that "[b]ecause of Dr. Antonini's clear and deliberate indifference(s) towards my serious medical needs I am constantly being denied medical treatment over and over again from him and his medical staff." *Id.*, ¶ 35. Plaintiff also claims that by denying him proper medical treatment and taking away his wheelchair, Dr. Antonini was retaliating against him for having filed a prison grievance. *Id.*, ¶¶ 16, 21, 25.

Plaintiff asserts three separate claims in his Complaint: (1) and Eighth Amendment violation (Count I); (2) a First Amendment retaliation claim (Count II); and (3) a state law claim of intentional infliction of emotional distress (Count III).

In his Motion to Dismiss [Docket #10], filed pursuant to Fed.R.Civ.P. 12(b)(6), Defendant argues that the Plaintiff has failed to demonstrate that he exhausted his administrative remedies prior to filing suit, as required by 42 U.S.C. §1197e(a). He also

-2-

argues that the First Amendment retaliation claim fails as a matter of law.

In his Motion for Summary Judgment [Docket #20], Defendant argues that there is no question of material fact as to either the Eighth Amendment deliberate indifference claim or the First Amendment retaliation claim. Attached to the Motion as Exhibit A are excerpts from Plaintiff's medical records. Attached as Exhibit B is the affidavit of Dr. Audberto Antonini, M.D., the Defendant. He indicates, at ¶ 2, that "[t]he statements in this affidavit are based upon my personal recollections and knowledge and review of the medical records."

The Defendant's affidavit (Exhibit B) describes the Plaintiff's treatment history as follows.[1] The Plaintiff was transferred to JCF in September of 2004. On September 16, 2004, Plaintiff was seen by Nurse Kinder, who noted a history of back pain dating to May, 2004, when Plaintiff tripped and fell. Plaintiff was prescribed Ibuprofen 200 mg, and was given an immediate dose of 800 mg.

On September 22, 2004, Plaintiff was seen by J.T. Shaw, a physical therapist. He was given a TENS unit and instructions for application of hot towels. Four days later, on September 26, 2004, the Plaintiff indicated that the TENS unit helped, although he still presented in a stooped position.

On September 28, 2004, a Physician Assistant (PA) prescribed Motrin 800 mg for two weeks, and scheduled an appointment with Defendant Antonini.

Plaintiff saw Dr. Antonini on October 4, 2004, complaining of tightness, tingling and

---

[1] The statements in the affidavit as to treatment dates and modalities is corroborated by the 43 pages of medical records contained in Exhibit A.

-3-

numbness in the lower back. Dr. Antonini found normal muscular tone, but diagnosed chronic low back pain with muscle sprain/strain. He noted that the physical examination did not explain the Plaintiff's claim that he had been walking bent over for five months. Antonini stated that he suspected the Plaintiff was exhibiting drug seeking behavior because the physical findings did not match the subjective complaints. Nevertheless, giving the Plaintiff the "benefit of the doubt," he prescribed pain medication.

On November 4, 2004, Dr. Antonini examined Plaintiff again, finding "non-specific back pain–chronic, and ordered lower back x-rays. He also prescribed Toradol "for short-term management of moderately severe acute pain." ¶ 13.

A radiology report of November 18, 2004 revealed "some scoliosis (curvature) but no structural abnormality and no evidence of recent or ancient fracture." On December 2, 2004, Dr. Antonini ordered an injection of Toradol 60 mg, and prescribed a wheel chair.

On December 16, 2004, Plaintiff claimed that he re-injured himself while climbing stairs, and was seen in an emergency room, where he was given injections of Toradol 60 mg and Robaxin 1000 mg.

On December 17, 2004, a Nurse Practitioner diagnosed Plaintiff with lower back pain, but noted that his physical complaints were not confirmed by anything in the physical exam.

On December 17, 2004, following discussions with the Nurse Practitioner, Dr. Antonini recommended discontinuing the wheelchair. He discontinued Neurontin and Flexeril, noting that Plaintiff was already taking Tegretol and Baclofen.

On December 20, 2004, following another emergency room visit, Dr. Antonini

ordered a lumbar MRI of Plaintiff, and wrote orders for him to keep the wheelchair until the MRI was performed.

The MRI report showed only mild degenerative changes and mild scoliosis with minimal disc herniation. X-rays performed the same day were negative. Dr. Antonini then requested that Plaintiff be evaluated by a neurosurgeon. Plaintiff was seen by the neurosurgeon, Dr. Rawal, on February 25, 2005. Dr. Rawal noted negative straight leg raising sign, and could not find any localizing abnormality. Muscle strength was within normal limits, and Dr. Rawal's reading of the MRI was as described above. Although he noted "a subltle finding at L1/L2 on the left side," Dr. Rawal could not find any abnormality for L2 radiculopathy. Dr. Rawal suggested a trial of an epidural block.

Dr. Antonini saw Plaintiff on March 3, 2005, and informed him that the lab work, physical therapy, x-rays, MRI and neurological evaluation all failed to show any objective support for his subjective complaints of back pain. More x-rays were taken that day, showing negative lumbar spine, except for possible muscle spasm.

Defendant saw Plaintiff again on March 4, 2005, following another claimed fall. At that time, Dr. Antonini requested that Dr. Rawal administer an epidural steroid block. Antonini noted that "up to this point, I had tried labwork (SMA23, CBC, U/A), hepatitis profile, VDRL, HIV, L/S spine x-rays, MRI of lumbosacral spine, neurosurgical evaluation, and neurological evaluations, all of which were normal."

Plaintiff received epidural blocks, but reported that they provided only mild improvement. Dr. Antonini stated that the epidural block "should have provided at least

some pain management if there was a physical basis for his symptoms" and added that he "could find no clinical logical explanation for his complaints." ¶ 27.

Dr. Antonini saw Plaintiff again on May 16, 2005. Although Plaintiff still complained of pain, the physical examination was unremarkable, and every diagnostic test and evaluation had been negative up to that point. Nevertheless, Dr. Antonini prescribed Elavil, Flexeril and Motrin 800 for Plaintiff's complaints.

Plaintiff was transferred to a different prison on July 6, 2005.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing

-7-

"evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   ANALYSIS

#### A.   Motion to Dismiss [Docket #10]

##### 1. Exhaustion

The Defendant's motion to dismiss, brought pursuant to Rule 12(b)(6), challenges the Plaintiff's claimed exhaustion of administrative remedies. Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 819, 149 L.Ed.2d 958 (2001).

The Defendant's motion is premised on the Plaintiff's alleged failure to meet his burden of proving exhaustion, *Defendant's Motion*, ¶ 8, his failure to submit documentation showing that he "completely followed the administrative grievance procedure available to him as to all claims and defendants," *Id.*, ¶ 10, and his failure to show total exhaustion, *Defendant's Reply Brief* [Docket #18], p.4. In support of these arguments, Defendant relies

-8-

on *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998) (holding that a plaintiff has the burden of showing exhaustion), *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001) (holding that an inmate must attach grievance documentation to a complaint), and *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005) (adopting a "total exhaustion" rule).

On January 22, 2007, the United States Supreme Court, in a unanimous decision written by Chief Justice Roberts, overruled all of the cases cited by Defendant. *See Jones v. Bock*, 549 U.S.__, __S.Ct.__, 2007 WL 135890 (2007). In *Jones*, the Court held that the PLRA does not require an inmate-plaintiff to plead or demonstrate exhaustion. Rather, the Court held that failure to exhaust is an affirmative defense that must be raised and proven by the defendant. ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"). In addition, the *Jones* Court rejected the total exhaustion rule set forth in *Jones Bey*.

Because the Defendant's motion is based on an analysis that has been soundly rejected by the Supreme Court, it must be denied.[2]

### 2.    Retaliation

The Defendant's challenge to the First Amendment retaliation claim will be discussed

---

[2] Given the change in the law, it would ordinarily be appropriate to deny the motion without prejudice, thus allowing the Defendant to raise and attempt to prove non-exhaustion as an affirmative defense. However, as discussed below, a review of this case on the merits under Rule 56 must result in a dismissal of the entire Complaint with prejudice. Thus, the question of exhaustion is to a large extent moot.

below, in the context of the Rule 56 Motion for Summary Judgment, since it is based on matters outside the pleadings, i.e., the medical records and affidavit of Dr. Antonini.

### B.     Motion for Summary Judgment [Docket #20]

#### 1.     Eighth Amendment

Plaintiff alleges an Eighth and Fourteenth Amendment violation based on Defendant's deliberate indifference to his medical needs. The Supreme Court has held that prisoners have a constitutional right, under the Eighth Amendment, to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

A review of the medical records and the affidavit of Dr. Antonini shows that the Plaintiff has failed to demonstrate that he has a "sufficiently serious" medical problem. None

of the objective clinical test and examination, including MRIs, x-rays, laboratory tests and physical examinations, reveals any serious abnormality that would account for the Plaintiff's subjective complaints of pain. The only anomalies–mild scoliosis and slight degenerative changes, with minimal disc herniation and no structural abnormalities– are relatively inconsequential, and would not be expected to cause the degree of pain claimed by the Plaintiff. Accordingly, he has failed to establish the objective prong of his Eighth Amendment claim.

In addition, Plaintiff has not established that the Defendant was deliberately indifferent to, or ignored any of his medical needs. To the contrary, the medical records and the affidavit of Dr. Antonini show a high degree of medical attention to the Plaintiff's complaints, notwithstanding the essentially negative clinical findings. He was examined numerous times, and received pain medication, including Motrin, Toradol, Flexeril, Tegretol, and even an epidural steroid block. He was provided with physical therapy, and had numerous diagnostic procedures, including x-rays and an MRI. He was referred to and examined by a specialist in neurosurgery. These things were all done in a timely manner, responsively to the Plaintiff's complaints and requests for treatment. That Dr. Antonini might have expressed frustration or anger, or accused Plaintiff of malingering, is of no import, given the degree of medical attention provided.

Nor is it significant that the Plaintiff disagrees with Dr. Antonini's medical conclusions or decisions as to treatment. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

The point is that the Defendant responded reasonably to the Plaintiff's clinically unsubstantiated complaints of pain. *See Farmer v. Brennan, supra*, 114 S.Ct. at 1982-83 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted").

Because there is no genuine issue of material fact as to Plaintiff's Eighth Amendment claim, summary judgment should be granted to Defendant.

### 2.    Retaliation

Plaintiff claims that the Defendant retaliated against him for having filed a grievance, and that the retaliation took the form of denial of appropriate medical care, including taking away his wheelchair and depriving him of pain medication.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the

plaintiff's protected conduct."

Clearly, filing an administrative grievance is protected conduct; therefore, Plaintiff has met the first prong of *Thaddeus-X*.

As to the second prong, an "adverse action" is defined as one which "is capable of deterring a person of ordinary firmness from exercising his or her" rights. *Id.*, 175 F.3d at 398. While the denial of necessary pain medication would certainly be considered an adverse action under this definition, the medical records show that Plaintiff was *not* denied pain medication, having received, over the course of his treatment at JCR, Motrin 800 mg, Toradol, Robaxin, Flexeril, Neurontin, Tegretol, and epidural blocks. As to medication, then, the Defendant did not take any adverse action.[3]

Plaintiff also claims that Dr. Antonini took away his wheelchair in retaliation for filing a grievance. The record shows that on December 17, 2004, Antonini recommended discontinuation of the wheelchair, but three days later, on December 20, 2004, continued the wheelchair pending results of a scheduled MRI. Nevertheless, for purposes of this discussion, I will allow that revoking use of a wheelchair, even for a short period, would

---

[3] To the extent that Plaintiff is claiming that changes in the type or dosage of medication constitute adverse actions, he is asking this Court to second-guess a medical judgment. *See Westlake v. Lucas, supra*. Further, even if the medication regimen were considered an adverse action, Plaintiff has not shown a causal relationship between that and his filing of a grievance against the Defendant. Instead, the record shows that in spite of the absence of objective clinical findings, Dr. Antonini prescribed numerous medications in response to Plaintiff's subjective complaints, both before and after the filing of the grievance. The record clearly shows that his decisions and actions were based on medical judgment, not punitive motives.

constitute an adverse action.

Plaintiff's retaliation claim fails under the third prong of *Thaddeus-X*. He filed his grievances concerning inadequate medical care, including the discontinuation of his wheelchair, between December, 2004 and February, 2005. (Copies of the grievances and the responses are attached to the Complaint). Dr. Antonini first prescribed a wheelchair on November 18, 2004, based on the Plaintiff's subjective complaints. He recommended discontinuation of the wheelchair on December 17, 2004, following a discussion with a Nurse Practitioner who had examined the Plaintiff on that same day. The Nurse Practitioner noted that the Plaintiff's physical complaints were not confirmed by anything in the physical examination. Between October 4 and December 17, Dr. Antonini himself examined the Plaintiff and reviewed clinical tests, including x-rays, finding no abnormality that would account for the Plaintiff's pain. Thus, his recommendation to discontinue the wheelchair on December 17 was based on his medical judgment, not on his desire to retaliate. Indeed, three days later, on December 20, 2004, he reversed his decision, and continued the use of the wheelchair pending MRI results. This is inconsistent with a theory of retaliation, and again shows that Dr. Antonini's decisions with regard to the wheelchair were clinical, not punitive.

The Plaintiff has therefore shown no genuine issue of material fact supporting his retaliation claim, and summary judgment should be granted.

### 3.    Intentional Infliction of Emotional Distress

Plaintiff also alleged a state law claim of intentional infliction of emotional distress. *Complaint*, Count III. Defendant has neither asked for summary judgment nor discussed this

-14-

claim in the present motion. That being the case, the Court ordinarily would be precluded from *sua sponte* dismissing the claim unless the plaintiff is given notice and the opportunity to amend the complaint. *See Tingler v. Marshall*, 716 F.2d 1109, 1111-12 (6th Cir. 1993). However, where a claim is frivolous, a court may dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). "[A] district court may, at any time, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *See also Higgins v. Lavine*, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (patently frivolous case divests the district court of jurisdiction). A case is frivolous if it lacks arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

To establish a Michigan common law claim of intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985). Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674. This is a demanding standard: It is not sufficient to show that the defendant acted tortiously, intentionally, or even

-15-

criminally. *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603.

As discussed above, this Plaintiff has shown nothing more than his disagreement with the clinically supported medical judgments of Dr. Antonini. He requested evaluation and treatment for his back pain, and received evaluation and treatment, including numerous diagnostic tests, consultation by a specialist, and pain medication. That the treatment did not appear to resolve his objective complaints, while unfortunate, is beside the point. No rational trier of fact could conclude that Dr. Antonini's conduct was "outrageous."

I therefore recommend that the Plaintiff's state law claim of intentional infliction of emotional distress be dismissed as frivolous under Rule 12(b)(1).

## IV.  CONCLUSION

I recommend as follows:

(1) That Defendant's Motion to Dismiss [Docket #10] be DENIED.

(2) That Defendant's Motion for Summary Judgment [Docket #20] as to the Plaintiff's Eighth Amendment deliberate indifference claim (Count I) and his retaliation claim (Count II) be GRANTED.

(3) That the Court *sua sponte* dismiss Plaintiff's state law claim of intentional infliction of emotional distress (Count III) under Fed.R.Civ.P. 12(b)(1).

(4) That the entire Complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days

of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and
complexity. The response must specifically address each issue raised in the objections, in the same order and labeled ad "Response to Objection #1," "Response to Objection #2," etc.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  February 7, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 7, 2007.

                        S/G. Wilson
                        Judicial Assistant